UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERIAN STEVEN MOORE, and<br>GEORGE PROVIDENCE II,<br><br>    Plaintiff,<br>v.<br><br>WAYNE WATSON, President of Chicago<br>State University, and ERMA BROOKS<br>WILLIAMS, Associate President for<br>Communications and External Relations,<br>in their official capacities<br><br>    Defendants. | No. 09 C 0701<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Gerian Steven Moore ("Moore"), a former professor at Chicago State University ("University"), and George Providence II ("Providence"), a former student at the University and editor of its student newspaper, brought suit alleging that Defendants had violated the First Amendment of the Constitution of the United States and the Illinois College Campus Press Act ("ICCPA"). Both Plaintiffs' claims survived summary judgment, but the court concluded they were not entitled to a money damages award. *See Moore v. Watson*, 738 F. Supp. 2d 817 (N.D. Ill. 2010). Following a bench trial, this court entered a judgment in favor of Plaintiff Moore only. *See Moore v. Watson*, 838 F. Supp. 2d 735 (N.D. Ill. 2012). Moore has now filled his bill of costs and petitions for an award of attorneys' fees. Defendants acknowledge their liability for fees expended in obtaining a successful result, and for costs, but contend that Moore has overstated the amount to which he is entitled. For the reasons explained here, Plaintiff's motion [112] is granted in part and denied in part.

## FACTUAL BACKGROUND

This case began more than four years ago and has cost hundreds of thousands of dollars in legal fees. (Pl.'s Mem. in Supp. of Mot. Att'y's Fees and Costs [114], (hereinafter "Pl.'s Mem."),

at 1, 22.) Plaintiffs filed their complaint on February 3, 2009, alleging that Defendants violated their rights under the First Amendment of the Constitution of the United States and the Illinois College Campus Press Act, and seeking declaratory judgment, injunctive relief, and money damages. (Compl. [1], at 1, 8.) Specifically, Plaintiffs claimed that Moore–a faculty member at Chicago State University–was terminated in retaliation for his refusal to censor the student newspaper, *Tempo*, which had published a series of news stories critical of the University administration. (*Id.* at 2-7.) Plaintiffs alleged further that the University took action to shut down the paper. (*Id.* at 6-7.) Plaintiff Providence was the student editor of that publication. (*Id.* at 2.) Publication of *Tempo* ceased, and Providence withdrew from the University, citing harassment by University officials. *Watson*, 738 F. Supp. 2d at 820. The complaint sought a declaration that Moore's termination and Defendants' interference with the publication of *Tempo* violated the First Amendment and ICCPA. (Compl. at 8.) The complaint also sought Moore's reinstatement, back pay, and an injunction prohibiting further interference with the publication of *Tempo*. (*Id.* at 8.)

By November 2009, discovery had concluded and the parties filed cross-motions for summary judgment. On September 7, 2010, this court denied Plaintiffs' motion, and Defendants' motion was denied in part. *See Moore v. Watson*, 738 F. Supp. 2d 817. Significantly, the court permitted all of Plaintiffs' claims to proceed to trial, but money damages were barred. *Id.* at 835. In May 2011, Plaintiffs filed their Memorandum on Appropriate Equitable Remedies (hereinafter "Remedies Memo") expanding on the relief requested in the complaint. (*See* Remedies Memo [98].) The Remedies Memo requested declarations that the Defendants' attempts at prior review of *Tempo* violated the First Amendment and ICCPA; that suspending publication of *Tempo* was unlawful; that Moore's removal as the faculty advisor to *Tempo* and his termination violated the First Amendment and ICCPA; that Defendants' "public relations protocol" violated the First Amendment and ICCPA; that by withdrawing financial support, removing *Tempo's* business manger position, and refusing to support the continued operation of *Tempo*, Defendants violated the First

Amendment and ICCPA; and that Providence's resignation as editor of *Tempo,* and withdrawal from the University, were the result of harassment and the censure of *Tempo*. (*Id.* at 1-13.) The memo also requested that the court issue an injunction against (a) Defendants' prior review of the paper; (b) the suspension, restriction, and interference with the publication of *Tempo*; and (c) enforcement of Defendants' public relations protocol. Plaintiffs further sought reinstatement of *Tempo* and the business manager position; Moore's reinstatement; Providence's readmission to the University and reinstatement as editor of *Tempo*; and removal of all negative information from Plaintiffs' files. (*Id.*)

In March 2011, Defendants filed a motion to dismiss Plaintiffs' ICCPA claims. That motion remained pending when the case proceeded to trial on April 11, 2011. Both Plaintiffs testified, as did three other witnesses, and the parties introduced numerous exhibits. On March 13, 2012, this court entered a judgment in favor of Plaintiff Moore. *See Moore v. Watson*, 838 F. Supp. 2d 735. The court denied Defendants' motion to dismiss the ICCPA claims, but determined that Moore could only be granted relief pursuant to the First Amendment. *Id.* at 755, 763. The court declared that Moore's termination was a violation of the Plaintiffs' First Amendment rights, and ordered Defendants to reinstate Moore with all negative material regarding his termination expunged from his record. *Id.* at 763. Although the court declared that Moore's termination violated Providence's First Amendment rights, the court declined to grant any of the other relief pertaining to Providence. *Id*.

Plaintiff Moore now seeks $2,542.48 in costs under 42 U.S.C. § 1920; and $240,336.11 in attorney's fees for 630.2 total hours of work by three attorneys, plus a thirty-percent upward adjustment under 42 U.S.C. 1988.

**DISCUSSION**

**I.     Attorney's Fees**

A prevailing party in a civil rights action is entitled to recover his reasonable attorney's fees. *County of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (fee awards encourage meritorious

3

claims); *Blum v. Stenson*, 465 U.S. 886, 897 (1984). There is a strong presumption that the lodestar is a reasonable amount of attorney's fees. *Perdue v. Kenny A.*, 559 U.S. 542 (2010); *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995). The lodestar is calculated by multiplying the reasonable number of hours by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The inquiry into what is a reasonable amount of attorney's fees does not end, however, with a calculation of the lodestar, which may be adjusted in some circumstances. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010); *Johnson v. GDF, Inc.*, 668 F.3d 927 (7th Cir. 2012).

### A. Plaintiff as Prevailing Party

The Seventh Circuit held in *Sottoriva* that plaintiffs are "prevailing parties" for the purpose of attorney's fees "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." 617 F.3d at 975. In this case, Plaintiff Moore was reinstated and his personnel file purged of all negative comments. Further, the court declared that Moore's removal and termination violated the First Amendment. Plaintiff believes he succeeded on significant issues when the court ordered Defendants to reinstatement him and expunge his employment records. (Pl.'s Mem. at 7.) Accordingly, Plaintiff argues, he is entitled to his full requested fees and costs. *See Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (fee award should not be reduced because judgment amount obtained was less than what plaintiff originally sought or because fees were greater than amount plaintiff recovered so long as there is a more than nominal award).

Defendants see the circumstances differently. Plaintiff was not granted relief pursuant to ICCPA itself, they note, and was not granted much of the relief requested in the complaint or in the Remedies Memo. (Defs.' Objection to Pl.'s Mot. [123] (hereinafter "Defs.'Mem."), at 6.) Defendants point out that Plaintiff's complaint and the Remedies Memo requested wide-ranging injunctive and declaratory relief and money damages, yet the court ordered only limited injunctive and declaratory

4

relief. (*Id.*) This limited success justifies a significant downward departure from the lodestar, Defendants urge. (*Id.* at 6, 17-20.) Defendants also object to particular time entries from Plaintiff's lawyers that they claim are insufficiently specific, unrelated to the successful claims, or duplicative.

Plaintiff resists any reduction from his claimed fees and urges that a downward departure for partial success is not appropriate. In fact, Plaintiff urges, the court should increase the award beyond the lodestar. (Pl.'s Mem. at 22.) Plaintiff argues that *Hensley* factors weigh in favor of awarding his attorneys a thirty-percent lodestar increase. In arguing for this result, Plaintiff asks the court to recognize, among other things, that he brought an "undesirable" case which involved difficult and novel legal and factual issues; that his attorneys provided the majority of their services to Plaintiff on a contingency basis; and that his attorneys are of distinguished experience, reputation, and ability. (*Id.* at 14-21.)

The court recognizes that Defendants have engaged in a line-by-line analysis of the fees billed by Plaintiff's attorneys. The court acknowledges, further, that Plaintiff not did receive all of the relief he requested. In this case, however, Plaintiff's First Amendment and ICCPA claims and the various requests for relief involve the same operative facts and controlling legal principles. As explained below, the court concludes that some of the *Hensley* factors favor a lodestar reduction while others do not. Ultimately, an award based on the lodestar is appropriate, utilizing the hours and rates outlined below, with no additional adjustment.

  **B.**  **Calculation of the Lodestar**

    **1.**  **Hourly Rates**

Defendants have challenged the billing rates claimed by Plaintiff's attorneys as excessive. (Defs.' Mem. at 8.) Plaintiff argues that the rates charged by his attorneys were reasonable based on their skill, experience, and the rates paid other civil rights attorneys in the Chicago legal market. (Pl.'s Mem. 8, 10.) The requested hourly rates for his attorneys are:

  Roma J. Stewart    (admitted in 1972)  $450

      Stephen Stern                    (admitted in 1977)     $350
      Madeleine S. Podesta        (admitted in 2007)     $275

(Pl.'s Mem. at 22.) Roma J. Stewart was admitted to the bar in 1972. (Stewart Aff. [114-4] ¶ 3-4.) Through she has provided no copies of retainer agreements, Stewart's affidavit states that she bills her clients between $0 and $400 per hour. (*Id.* ¶ 29.) The highest attorney's fees rate awarded Stewart was $300 per hour by the Illinois Human Rights Commission in 2003. (*Id.* ¶ 27.) Stephen Stern was admitted to the bar in 1977. (Stern Aff. [114-4] ¶ 1.) Judge Castillo approved a billing rate of $275 for Stern in August 2004. (*Id.* at ¶ 14.) Stern offers no evidence of his current billing rate. Madeleine S. Podesta was admitted to the bar in 2007. (Podests Aff. [114-4] ¶ 3.) Podesta has provided an affidavit from a partner from the law firm that employs her stating that the firm bills its clients $275 per hour for her work. (Burke Aff. [114-5] ¶ 4.)

Plaintiff has submitted no other evidence of his attorneys' billing rates, but does present affidavits from two civil rights attorneys attesting that the rates for Stewart and Stern are reasonable. (Gonzalez Aff. [114-5] ¶ 4-8; Lee Aff. [114-5] ¶ 13-15.) Plaintiff includes the affidavit of David L. Lee, a hearing officer for the Cook County Commission on Human Rights and sole practitioner who specializes in civil rights litigation. Lee states that the rates sought by Stewart and Stern are "below market, as the rate is less than the rates charged by other practitioners of similar experience in the employment field in the Illinois legal community." (Lee Aff. ¶ 15.) Plaintiff also includes an affidavit from Richard J. Gonzalez, a Clinical Professor who practices exclusively employment law within the Chicago Kent College of Law Legal Clinic, who stated that the rates sought by Stewart and Stern represent "normal and customary rates for attorneys of their experience and competence levels within the Chicago area for lawyers handling civil rights cases." (Gonzalez Aff. ¶ 8.)

Though it is not controlling in the Seventh Circuit, Plaintiff also references the Laffey Matrix created by the United States Attorney's Office for the District of Columbia, as well as various

6

Northern District cases where Plaintiff argues the Laffey Matrix has been approved, either expressly or implicitly. (Pl.'s Mem. at 8.) Under the Laffey Matrix for 2008-2011, the suggested hourly rate is $475 for twenty or more years of experience, $420 for eleven to nineteen years of experience, $335 for eight to ten years of experience, $275 for four to seven years of experience, and $240 for one to three years of experience. (Laffey Matrix [114-6] at 1.) Without adjusting for geographical differences in pay, Plaintiff argues, the rates sought for his attorneys are less than, or equal, to the Laffey Matrix presumptions. (Pl.'s Mem. at 5-7, 10.)

Defendants counter that Plaintiff's attorneys fees are excessive. Defendant propose the following rates:

| | |
|---|---|
| Roma J. Stewart | $325 |
| Stephen Stern | $300 |
| Madeleine S. Podesta | $200 |

(Defs.' Mem. at 8, 10.) Defendants urge that the rates sought by Plaintiff's attorneys reflect a "premium" as opposed to a "true average" of what has been paid by previous clients in similar civil rights cases. (*Id.*)

Plaintiff is not required to establish a "true average" rate. The presumptive hourly rate is the actual billing rate the attorney typically receives for similar litigation. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). There are situations where an attorney has little evidence of his or her established market rate, for example, where the attorney most often relies on contingent fee arrangements or statutory fee awards. In that situation, the court will evaluate the "next best evidence" of the attorney's market rate: "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.* (internal quotation marks omitted).

For both Stewart and Stern, Defendants have suggested that the hourly rate must be in line with counsel's previous attorneys' fees awards ($300 for Stewart and 275 for Stern). (*Id.* at 8-9.) These rates were awarded in 2003 and 2004, however. Podesta provided an affidavit from a

7

partner at her firm stating that her work is billed at $275 per hour, which is the rate she seeks in the present case. Defendants point out that the rate for commercial work may not be applicable to civil rights litigation, and question whether the rate at which Podesta is billed is the rate clients actually pay. (*Id.* at 10.) It might be ideal for the court to have evidence that each attorney's rate is the typical rate paid by clients for similar work in similar circumstances, but such a showing is not required. Plaintiff has presented sufficient evidence that Stern and Podesta's rates are reasonable. The evidence establishes that the rates requested are actually paid by other clients, are in line with market rates, and are at or below the unadjusted Laffey Rates for attorneys of comparable experience. The court approves Stern and Podesta's requested hourly rates. Stewart has not provided evidence sufficient to support a rate of $450, however; her affidavit states that she bills her clients between $0 and $400 per hour. (Stewart Aff. ¶ 29.) Stewart has not shown why she is entitled to a fee greater than the rate she charges her own clients, and $100 per hour greater than Stern, an attorney of comparable experience. The court awards Stewart fees at the rate of $400 per hour.

### 2. Number of Hours Billed

The court next considers the number of hours Plaintiff's counsel spent litigating this case. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 see also *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012). In addition, "the court may reduce the award where the description of the work performed is inadequate." *Thompson v. City of Chicago*, No. 07 C 1130, 2011 WL 2837589, at *7 (N.D. Ill. Feb.14, 2011). Defendants raise several objections to the number of hours expended in this case, which the court considers below.

Plaintiff seeks to recover attorney's fees for 630.2 total hours of work by three attorneys broken down as follows:

    Roma J. Stewart                  284.5 hours

| | |
|---|---|
| Stephen Stern | 243.1 hours |
| Madeleine S. Podesta | 102.6 hours |

(Pl.'s Mem. at 22.) Defendants respond that the number of hours billed is excessive because Plaintiff did not receive all the relief he originally sought. Defendants specifically challenge billing entries for "unsuccessful matters," including time spent on a motion for injunctive relief, on Plaintiff's motion for summary judgment, on the Remedies Memo and time spent regarding Timothy Edwards. (*Id.* 12-13.) The court is unwilling to draw such fine lines. *See Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (Where the plaintiff's claims involve a common core of facts or are based on related legal theories the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.) Plaintiff brought two claims, one alleging that Defendants' actions violated the First Amendment, the second alleging that the same conduct violated ICCPA. While Plaintiff was not granted relief under ICCPA, he was successful on this claim because it is ICCPA that establishes that *Tempo* is a public forum, a showing necessary to succeed on his First Amendment Claim. Although Plaintiff was not granted all of the injunctive and declaratory relief he sought, all of the relief he did achieve was dependent on the same operative facts and legal principles. The work performed on the contested matters certainly contributed to Plaintiff's success and streamlined the evidence presented at trial. Further, the court is not convinced that Edward's testimony was entirely duplicative or unnecessary to Plaintiff's claims.

Defendants also take issue with several billing entries characterized as vague, duplicative, and clerical. (Defs.' Mem. at 11-12, 14-16.) Specifically, Defendants claim that several of Stewart's entries are impermissibly vague. (Defs.' Mem. at 12.) The court has reviewed the subject time entries, and found that while, not a model of clarity, they are sufficiently detailed to identify the how the time was spent. Defendants argue, in addition that some of the time Plaintiff's counsel spent on the case was duplicative. (Defs.' Mem. at 14-15.) For example, both Stewart and Stern billed

time for preparing the pretrial memorandum and the closing argument. (*Id.* at 15.) Again, the court is not convinced. That the core responsibilities for a case might shift among the lawyers is not remarkable, and the combined totals are not unreasonable. Defendants also claim that Plaintiff's attorneys inappropriately billed time for clerical matters. (*Id.* at 14-15.) These objections are similarly without merit. In each instance the time entry is either not clerical, or the time spent on the task was de minimus.

Finally, Defendants contend that the time spent preparing the fee petition was unreasonable. (Defs.' Mem. at 16.) Plaintiff seeks 102.62 hours for preparing the fee petition split among the three attorneys as follows:

| | |
|---|---|
| Roma J. Stewart | 27.57 hours |
| Stephen Stern | 56.05 hours |
| Madeleine S. Podesta | 19 hours |

(*Id.* at 17.) Defendants point out that Plaintiff seeks 530 hours for the underlying litigation. (*Id.*) Defendants suggest the court grant no more than 40 hours for the petition–24 hours for Stern, 8 hours for Stewart, and 8 hours for Podesta. (*Id.*) The court agrees that in light of the hours billed for the underlying litigation, the time spent on the fee petition was excessive. The court will grant Plaintiff's attorneys 55 hours for preparation of the fee petition: 25 hours for Stern; 20 hours for Stewart; and 10 hours for Podesta.

In sum: the court approves the lodestar as itemized below:

| | Hours | Rate | Total |
|---|---|---|---|
| Roma J. Stewart | 276.93 | $400 | $110,772.00 |
| Stephen Stern | 212.05 | $350 | $74,217.50 |
| Madeleine S. Podesta | 93.6 | $275 | $25,740.00 |
| **Total Attorney's Fees:** | | | $210,729.50 |

### C. Adjustment of the Lodestar

A court may adjust the lodestar based on the twelve factors described in *Hensley v. Eckhart*, 461 U.S. 424, 430 (1983): (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 430 n. 3.

Plaintiff argues that his attorneys are entitled to a thirty-percent upward adjustment of the lodestar. (Pl.'s Mem. at 22.) Plaintiff first contends that the novelty and difficulty of the subject matter warrants a ten-percent adjustment. (*Id.* at 15-16.) Plaintiff is correct that this was a case of first impression, involving the recently-amended Illinois College Campus Press Act and its application in First Amendment cases. (*Id.* at 15.) The court agrees with plaintiff that this factor weighs in favor of an upward adjustment. Plaintiff argues for a five-percent adjustment for time limitation because Stewart experienced a health emergency, which required another experienced attorney–Stern–to step in late in the process creating case management difficulties. (Pl.'s Mem. at 16-17.) Defendants point out that this factor concerns the time limitations imposed by the client and the circumstances of the case. (Defs.' Mem. at 20.) While the court is sensitive to the difficulties caused by Stewart's medical emergency, any associated time limitations were not created by the client or the case itself. Defendants also argue that time and labor this case required was not as extensive as Plaintiff contends. (Defs.' Mem. at 19.) Defendants point out that only four depositions were conducted, and the trial only lasted three days. The court agrees that the time required for this case was not excessive, and that Plaintiff's counsel would not have been precluded from performing other work. This factor does not weight in favor of an upward adjustment, nor does it warrant reducing the value of the hours the attorneys actually spent on this case.

Plaintiff also seeks a ten-percent adjustment for the experience, reputation, and ability of his counsel. (Pl.s Mem. at 20.) Plaintiff's attorneys do have considerable experience handling civil

rights cases and good reputations in the legal community, but the court believes that expertise is reflected in the claimed hourly rates.

Plaintiff seeks a five-percent adjustment for the "undesirability" of the case. (Pl.s Mem. at 20-21.) Plaintiff cites the length of time involved in the case, and cash flow problems stemming from uncertainty and dely in fee awards. (*Id.* at 21.) Similarly, Plaintiff requests an additional five-percent adjustment because both Podesta and Stern have provided their services on a purely contingency basis, and that Stewart provided the "vast majority" of her services on contingency as well. (Pl.s Mem. at 18.) The court recognizes that Plaintiff undertook a substantial risk of nonpayment.

The Supreme Court has stated that "the most critical factor" is "the degree of success obtained" by the prevailing party. *Linda T. ex rel. William A. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 708 (7th Cir. 2005) (quoting *Hensley*, 461 U.S. at 436). When determining the degree of success, the Seventh Circuit has applied a three part test, where the court looks at "the difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed, and finally, the public purpose served by the litigation." *Conolly v.National School Bus Srvs., Inc.*, 177 F3d. 595, 597 (7th Cir. 1999). The question is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case. *Id.*

Defendants' suggestion that Plaintiff's degree of success in this case was minimal is unconvincing. There is a distinction between the claims Plaintiff brought and the relief sought pursuant to those claims. Plaintiff brought two claims; one alleging that Defendants' actions violated the First Amendment, the second alleging that the same actions violated ICCPA. While Plaintiff was not granted relief under ICCPA, he was successful on this claim because it is ICCPA that establishes that *Tempo* is a public forum, a showing necessary to succeed on his First Amendment claim. Defendants correctly observe that Plaintiff was not granted all the various forms of relief he requested. It is the court's view, however, that Plaintiff was successful with regard to

12

the most substantial relief available to him, *i.e.*, reinstatement to the same or a similar position, and a declaration that the actions taken against him violated the First Amendment. Although Plaintiff was not granted all of the injunctive and declaratory relief he sought, all of the relief he did achieve was dependent on the same operative facts and legal principles. Balancing all of the above factors, the court declines to either increase or decrease the lodestar.

## II.     Bill of Costs

Federal Rule of Civil Procedure 54(d)(1) provides that "[c]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Rule 54(d) "establishes a presumption in favor of a cost award" within certain categories. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). That presumption is a strong one. *See Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) (presumption is strong); *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir.1988) ("the presumption is difficult to overcome").

Counsel for Plaintiff lists $2,542.48 in costs taxable under § 1920. (Pl.'s Mem. at 21-22.) Under § 1920, a prevailing party may recover for (1) fees of the clerk and marshal; (2) fees of the court reporter for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters. 28 U.S.C. § 1920; *Harney v. City of Chicago*, 702 F.3d 916, 927 (7th Cir. 2012). The court considers both whether Plaintiff's bill of costs identifies expenses of the type authorized by the statute and whether the costs were reasonably incurred. *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000) (citing *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997)). The losing party has the burden of demonstrating that costs are not appropriate. *Harney*, 702 F.3d at 927 (citing *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005)).

Plaintiff requests $350 for fees of the clerk; $1,176.90 for court reporter fees; $151.44 for printing; $569.50 for summons and subpoena fees; $150.00 for witness fees; and $104.64 for copies. (Am. Bill of Costs [114-5], Ex. 7 to Pl.'s Mem.) Plaintiff argues that all costs were reasonable. Defendants dispute only the costs associated with the testimony of Timothy Edwards ($150), arguing that his testimony was duplicative and not reasonably necessary. (Defs.' Mem. 21-22.) The court disagrees. The court is not convinced that Edward's testimony was entirely duplicative, and given that he was one of only five witnesses to testify, Plaintiff's decision to call him at trial was not unreasonable. The court therefore grants Plaintiff's motion as to all costs sought. In sum, Plaintiff is entitled to $2,502.48 in costs under § 1920.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for attorneys' fees and costs [112] is granted in part and denied in part. Plaintiff is awarded $2,502.48 in costs and $210,729.50 in attorney's fees.

ENTER:

Dated: March 29, 2013

_____
REBECCA R. PALLMEYER
United States District Judge

14